DAVID ALI SHABAZZ, a/k/a David Johnson,

    Plaintiff,

    v.                                      Case No. 15-CV-120

OFFICER SERESEE,
OFFICER LAMB,
KELLY SALINAS,
WARDEN MARC CLEMENT,
ROBERT HUMPHRIES, and
STATE OF WISCONSIN DEPARTMENT OF CORRECTIONS,

    Defendants.

## DECISION AND ORDER ON PLAINTIFF'S MOTIONS AND SCREENING PLAINTIFF'S COMPLAINT

The plaintiff, David Ali Shabazz, a state prisoner, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated while he was house at Dodge Correctional Institution ("Dodge") and Kettle Moraine Correctional Institution ("KMCI"). This matter comes before me on Shabazz's motion for leave to proceed *in forma pauperis*, his motions for injunctive relief, and for screening of the complaint.

**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

The plaintiff has been assessed and paid an initial partial filing fee of $19.40. I will grant his motion for leave to proceed *in forma pauperis*.

## SCREENING OF PLAINTIFF'S COMPLAINT

I am required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual

allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

1. *Plaintiff's Complaint Allegations*

According the Shabazz, a legal folder containing documents, letters, and notes was taken from his property and inspected by staff when he was transferred to Dodge Correctional Institution. These papers were crucial to ongoing litigation in another federal case (Case No. 12-CV-1148, E.D. Wis.), and there was a discovery deadline. Shabazz obtained an extension from the court in that case and hired outside sources to assist in duplicating and copying the papers. On September 11, 2014, Shabazz handed these legal briefs and documents, along with a payment for certified mail with return receipt attached, to the mailroom clerk at Dodge. The next day, a Dodge employee reported to Shabazz that the papers were lost and that they were not mailed out.

Plaintiff filed a notice of claim with the Attorney General. On October 3, 2014, Shabazz met with Dodge Supervisor Timm and showed him 20 manilla folders of legal materials in his cell. Shabazz requested a box to place his legal materials in for confidentiality and security, but Timm denied the request.

3

Also on October 3, 2014, defendant Officer Serese interrupted Shabazz while he was on a call with the United States District Court. Then Officer Serese wrote a fallacious conduct report while officers seized his 20 manilla envelopes of legal materials, which were placed in a paper bag and taken away by staff at Dodge. Shabazz then spent 30 days in disciplinary segregation; when his papers were returned, they were in disarray with staples removed and files compromised.

Shabazz was then transferred to Kettle Moraine Correctional Institution ("Kettle Moraine"), where Supervisor Casey denied Shabazz access to the mail room to mail certified documents for discovery.

Officer Lamb wrote a fallacious conduct report, Shabazz was placed in detention, and his legal materials were confiscated. A hearing was held on the conduct report on November 16, 2014, and Shabazz requested that the hearing officer call the unit sergeant who was present at the time of the alleged incident. The hearing officer said they could not locate or compel the officer to testify in opposition to statements made in the conduct report. Shabazz spent 30 days in disciplinary segregation. When he got his briefs and files back, documents were missing, staples were removed, and the files were compromised by Kettle Moraine staff.

On January 5, 2015, Shabazz attempted to mail legal documents to a paralegal in Milwaukee. He attached a disbursement slip to the envelope for postage. At about 4:30 a.m., Sgt. Nazzario, the third shift supervisor, took the mail from the unit box. Shabazz told Sgt. Nazzario that there was a deadline in his case, that he was representing himself, and that the envelope needed to be mailed. At about 12:30 p.m., Sgt. Andrews, the first shift unit officer, stated that the mailroom had no knowledge of the envelope being mailed. Sgt. Andrews did not allow Shabazz to contact the mailroom supervisor.

4

According to Shabazz, Sgt. Andrews wrote two frivolous major conduct reports in regard to Shabazz filing this complaint and the actions involving Shabazz's attempt to contact supervisors about the conduct of officers' actions and them denying him access to the courts and due process. Plaintiff is in therapy due to the stress and duress caused by retaliatory action involving Sgt. Andrews and other staff at Kettle Moraine.

Shabazz suggests that he states claims under HIPAA and the Eighth Amendment. He further suggests that a medical document containing false information stating "Infection Control Notice" was leaked to prisoners, which has resulted in Shabazz being ridiculed and being put in danger. Shabazz notified the social worker and Warden Humphries.

Plaintiff also was denied a transfer from Kettle Moraine and access to a law library. A conduct report was written when Shabazz tried to access the courts.

As relief, Shabazz seeks a prison transfer and wants the disciplinary convictions described in the complaint expunged form his institutional record. He also seeks compensatory damages from defendants Clements, Lamb, Serese, Salinas, and Humphries.

*2. Analysis*

As an initial matter, the Wisconsin Department of Corrections is not a "person" within meaning of § 1983. *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 444 (7th Cir. 2009). "[T]he state of Wisconsin is also not a proper defendant for a § 1983 action because it has Eleventh Amendment immunity, *see Will v. Mich Dep't of State Police*, 491 U.S. 58, 66-67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and the only theory of liability for the state and the city would be *respondeat superior* which is not permissible in an action brought under § 1983." *Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008).

Additionally, Shabazz does not include any factual allegations regarding personal involvement by the wardens, Marc Clements or Robert Humphries, or KMCI Inmate

Complaint Examiner Kelly Salinas. Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009); *see George v. Smith*, 507 F.3d 605, 609 (7th Cir.2007). In the description of these defendants, Shabazz suggests that he included them as defendants because of their roles in reviewing administrative appeals. However, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a complete act of misconduct does not." *George*, 507 F.3d at 609–10. "One can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability. Or a complaint examiner who intervened to prevent the medical unit from delivering needed care might be thought liable." *Burks*, 555 F.3d at 595 (citations omitted). Shabazz has not stated claims against defendants Clements, Humphries, or Salinas.

I will now consider Shabazz's claims against defendant Serese, a correctional officer at Dodge, and defendant Lamb, a correctional officer at KMCI.

According to the plaintiff, Officer Serese interrupted a call the plaintiff had with the court, issued a conduct report to the plaintiff, and seized twenty manilla envelopes of legal material, which were returned to Shabazz in disarray. None of these actions supports a constitutional claim against Serese.

First, the plaintiff does not suggest that any of his legal materials were missing but, even if he did, Shabazz has not suggested that he lost a valid legal claim or defense because of the challenged conduct. *See Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir.2009); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir.2006).

Second, the plaintiff is unable to state an access to the courts claim against Serese because the plaintiff does not allege that he lost a valid legal claim or defense because of the challenged conduct. *See Ortiz*, 561 F.3d at 671. In fact, the case for which he had the telephone conference is still pending before a U.S. District Judge in this Court.

Third, the plaintiff cannot state a First Amendment retaliation claim because he does not allege any underlying First Amendment activity. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) ("[T]he right of access to the court is tied to and limited by a prisoner's right to 'vindication for a separate and distinct right to seek judicial relief for some wrong.'").

Fourth, Serese issuing a conduct report does not violate the plaintiff's rights, even if the plaintiff believes the conduct report to be false, as long as he receives the required due process protections. *See Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984). Also, Shabazz is not entitled to due process protections because he served only 30 days in disciplinary segregation and does not mention any other aggravating conditions of confinement. To be entitled to due process, a plaintiff must first show that he has a protected liberty interest. *Domka v. Portgage County*, 523 F.3d 776, 779-80 (7th Cir. 2008); *Sandin v. Connor*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). A liberty interest exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Sandin*, the Court held that a prisoner's sentence of thirty days of segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. The Seventh Circuit has gone farther, finding that confinement in segregation for 70 or 90 days was not an "atypical and significant" deprivation of the prisoner's liberty and thus did not implicate the liberty interest protected under the due process clause. *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1998) (70 days); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005)

(90 days). In *Marion v. Columbia Correctional Institution*, 559 F.3d 693 (7th Cir. 2009), the Seventh Circuit "noted that six months of segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights." *Id.* at 698 (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995).

With regard to defendant Lamb, Shabazz asserts that Lamb wrote a false conduct report and then did not testify at Shabazz's due process hearing so Shabazz had no opportunity to cross-examine him. Shabazz spent 30 days in disciplinary segregation but, as discussed above, that is not enough to trigger a liberty interest or require due process safeguards. *See Sandin*, 515 U.S. at 486. Additionally, Shabazz does not suggest that he lost a valid legal claim or defense because of the compromised legal files so he may not proceed on an access to the courts claim against Lamb. *See Ortiz*, 561 F.3d at 671. Shabazz does state that his legal files were compromised when he got them back after his time in disciplinary segregation and that some were missing. Although is not clear whether Lamb would be personally responsible for any missing documents, due process requires only that an adequate post-deprivation remedy exist when a state official's conduct is random and unauthorized. *Johnson v. Wallich*, 578 Fed.Appx. 601, 602 (7th Cir. 2014). Wisconsin law provides adequate post-depravation remedies. *Id.*

For the reasons discussed above, Shabazz's complaint does not state a claim against any of the named defendants. However, Shabazz's complaint does suggest that Sgt. Andrews retaliated against the plaintiff by writing two major conduct reports regarding the plaintiff after he filed a complaint. To state a retaliation claim, Shabazz must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). Shabazz has not named Sgt.

8

Andrews as a defendant, and the Court may not add litigants on its own motion. *See Myles v. United States*, 416 F.3d 551, 553 (7th Cir. 2005). Nevertheless, the Court will provide Shabazz with an opportunity to file an amended complaint against Sgt. Andrews.

If Shabazz wants to proceed, he must file an amended complaint curing the deficiencies in the original complaint as described herein. Such amended complaint must be filed on or before **Friday, July 24, 2015**. If an amended complaint is received, it will be screened pursuant to 28 U.S.C. § 1915A. Failure to file an amended complaint by that date may result in dismissal of this action.

Shabazz is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056-57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading[.]" *Id.* at 1057 (citation omitted).

## PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF

I will now turn to Shabazz's motions for injunctive relief. To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. *Wood v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon

9

a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). A preliminary injunction is appropriate only if it seeks relief of the same character sought in the underlying suit and deals with a matter presented in that underlying suit. *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) (citing *De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945)); *see also Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.") (citing *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975)); *Alston v. City of Madison*, 2014 U.S. Dist. LEXIS 106317, 2 (W.D. Wis. Aug. 4, 2014) ("[T]he general rule is that a plaintiff may not obtain injunctive relief on issues that do not relate to the claims asserted in the complaint.").

In his complaint, as noted above, Shabazz seeks damages related to his ability to access the courts and retaliation by prison staff for accessing the courts. Shabazz's complaint does not present any claim regarding his medical care. Because the complaint does not seek such relief, there is no scenario whereby the court, in entering judgment following a resolution of the merits of Shabazz's complaint, would include in that judgment any provisions regarding Shabazz's medical care. Consequently, I may not grant Shabazz the temporary injunctive relief he seeks. Shabazz's motions for injunctive relief must be denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Shabazz's motion for leave to proceed *in forma pauperis* (Docket # 2) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that Shabazz's motion for temporary restraining order (Docket # 11) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Shabazz's motion for preliminary injunction (Docket # 11) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Shabazz's motion for immediate relief (Docket # 15) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Shabazz's motion for order that he be permitted to appear at all hearings by telephone (Docket # 16) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Shabazz's motion for order that he be permitted to appear at all hearings by telephone (Docket # 18) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that on or before **Friday, July 24, 2015**, the plaintiff shall file an amended pleading curing the defects in the original complaint as described herein.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $330.60 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined.

**IT IS FURTHER ORDERED** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

11

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Dated at Milwaukee, Wisconsin this 26th day of June, 2015.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge